IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICARDO MANGUAL, | : | CIVIL ACTION NO. 1:13-CV-00071 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| DIA – WESLEY DRIVE, INC., | : | |
| CIRCLE C CORP. – D/B/A PAPA | : | |
| JOHN'S, and MALCO | : | |
| LANDSCAPE, INC., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER
June 4, 2014

In this personal injury action, arising under state law, each of the three defendants has filed a motion for summary judgment.  For the reasons set forth herein, the unopposed motions filed by DIA – Wesley Drive, Inc. ("Wesley") and Malco Landscape, Inc. ("Malco") shall be granted, while the opposed motion filed by Circle C Corp. – d/b/a Papa John's ("Papa John's") shall be denied.

**I.     Background and Procedural History.**

On January 10, 2013, the plaintiff, Ricardo Mangual ("Mangual") initiated this action by filing a civil complaint against Wesley, Papa John's, and Malco. *Doc.* 1.  Generally, Mangual claims that the defendants are jointly and severally liable for negligently causing his injuries that resulted from a slip and fall at the rear of the premises owned by Wesley, but leased to Papa John's, a pizza-making

franchise. Said premises were located at 1010 Wesley Drive #7, Mechanicsburg, Pennsylvania. More specifically, while making a commercial delivery to Papa John's, Mangual claims that he slipped on an accumulation of snow and ice, a hazardous condition. Mangual's theory of liability against Malco is the same and arises from Malco's agreement with Wesley to remove ice and snow from the premises.

After being served with the complaint, each defendant timely filed an answer. *Docs.* 6, 7, & 10. In addition, Wesley filed a cross-claim against Malco seeking indemnification in the event that it was found liable to Mangual, and Malco filed a similar cross-claim against both Wesley and Papa John's. *Docs.* 7 & 10. Thereafter, on March 26, 2013, the parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c)(1). *Doc.* 13 at 5.

In accordance with the case management plan, the discovery period closed on October 31, 2013. *Doc.* 20. Following the close of discovery, each defendant filed a summary judgment motion along with a brief in support, a statement of facts, and cited to pertinent exhibits. *Docs.* 28, 29, 30, 34, 35, 36, 39, 40, & 41. On December 23, 2013, Mangual filed a timely brief in support, a counterstatement of facts, and other documents. *Docs.* 42 & 43. In Mangual's brief, however, among other things, he states that he does not oppose the summary judgment motions filed by Wesley and Malco. *Doc.* 42 at 5-6. Instead, the substance of

Mangual's brief is aimed solely at Papa John's dispositive motion, which is presently ripe for review.

In this procedural context, Wesley's and Malco's unopposed summary judgment motions will be granted. With respect to Papa John's motion, however, it will be addressed on the merits in this Memorandum.

## II.     Factual Statement.[1]

On January 15, 2011, Mangual, who worked as a tractor-trailer operator for a trucking company, was set to make a delivery to Papa John's, a pizza-making franchise located in Mechanicsburg, Pennsylvania. *Doc.* 30 at 15, 26. The store where the franchise was located was leased to Papa John's by Wesley. On the date of the scheduled delivery, Max Onglade ("Onglade"), Mangual's co-driver, rode with Mangual to Papa John's. *Id.* at 20.

When Mangual and Onglade arrived to Papa John's, around 6:00 p.m., they pulled into the front as usual. *Id.* at 28, 33, 34. While in the front, Mangual noticed that the parking lot and sidewalks appeared to have been recently plowed. *Id.* at 31-32. In particular, he noticed that there were spots on the ground where he could see the bare pavement and other spots covered with snow patches. *Id.* Papa

---

[1]     In accordance with the summary judgment standard of review, I will present the facts in the light most favorable to Mangual, the nonmoving party. *See, infra*, Part III.

3

John's store manager, however, asked Mangual and Onglade to pull their delivery truck around to the rear of the leased premises. *Id.* at 28.

Mangual complied with the manager's request and drove the truck to the rear of the premises. *Id.* at 36-37. Once parked, Mangual got out and walked around to the front of the truck where it was "very slippery" and "kind of icy" with a "glaze on the ground." *Id.* at 29, 37, 38-39, 40. He then proceeded down the side of the truck, noticing patches of snow and bare pavement along the way. *Id.* at 40. While walking next to his truck, Mangual did not fall. Once he moved away from the truck and reached the staircase leading to Papa John's rear door, though, Mangual slipped and fell "like [in] a cartoon." *Id.* In that area, there was some ice, and the photographs that Mangual has filed as exhibits tend to support his description of the ground conditions. *See generally, Doc.* 42 at 21-22.

Onglade did not witness the incident, and Mangual testified that he could not tell a difference between what he felt under his feet at the front of the truck compared to the area where he slipped - "It felt like an ice-skating rink." *Doc.* 30 at 37, 38. Further, Mangual testified that the snow and ice appeared to have naturally accumulated, and was of the same type and condition of the ground at the front of the premises. *Id.* at 41.

With respect to the weather conditions on the day in question, Mangual testified that when he reported to work at noon he recalled that it was snowing and

4

he was dressed warmly.  *Id.* at 26; *see id* at 92.  Mangual also testified that it snowed at Papa John's after he fell.  *Id.* at 32.  Contrary to his own testimony, however, Mangual provided a certified past weather report from WeatherWorks (the "WeatherWorks Report").  According to the WeatherWorks Report, there was an accumulation of 3.3 to 4 inches of snow in the Mechanicsburg area on January 11, 2011.  *Doc.* 42 at 15.  The following day, Mechanicsburg experienced trace amounts of snow.  *Id.*  Thereafter, from January 13-15, 2011, Mechanicsburg reported zero snowfall or precipitation.  *Id.*  Moreover, the temperatures from January 12-14, 2011, were generally below freezing while the temperature on January 15, 2011, ranged from 38 to 20 degrees Fahrenheit.  *See id.*  The WeatherWorks Report also provides that at the time of the alleged incident, the temperature was above freezing.  *Id.* at 16, 17.  Further, on January 15, 2011, the average amount of snow or ice cover on the ground in Mechanicsburg ranged from 1.5 - 2.5 inches.  *Id.*

With respect to the leased premises, Papa John's was responsible "for its *pro rata* share of the cost of any snow [and ice] removal from" the premises.  *See id.* at 31, 39.  Wesley, though, retained the right to contract, or otherwise pay, for the snow and ice removal, which is how Malco became involved.  *Id.* at 39.  Pursuant to its contract with Wesley, Malco agreed to plow snow at the premises when the snow fall accumulation exceeded two inches.  *Id.* at 25.  The contract further

provided that Malco agreed to spread salt and cinders on required parts of public areas, "only when instructed by owner or otherwise set-up by [the] site manager." *Id.* On January 12, 2011, Malco performed under its agreement with Wesley by plowing the premises' parking lot, spreading 3.5 tons of pure salt, and spreading 5 bags of calcium on the sidewalks; however, Malco did no further maintenance at the premises in the days leading to Mangual's alleged slip and fall. *Id.* at 27.

### III. Jurisdiction and Legal Standard.

First, given that there is no dispute about the parties' citizenship, as alleged in Mangual's complaint, coupled with the fact that the amount in controversy exceeds the threshold amount, I find that this Court maintains subject-matter jurisdiction pursuant to 28 U.S.C. § 1332. As well, the defendants have effectively waived any challenge to the Court's personal jurisdiction. *See* Fed. R. Civ. P. 12(h)(1).

Next, with respect to the applicable legal standard, Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The purpose of summary judgment is to avoid unnecessary trials in cases where the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in

favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). Thus, the rule functions to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(quoting Fed.R.Civ.P. 56(e) advisory committee's notes on 1963 amendments).

Procedurally, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145–46 (3d Cir. 2004). If the moving party meets its burden with a properly supported motion, the burden then shifts to the nonmoving party to present specific facts that show there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the nonmoving party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the nonmovant's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)("[W]here the nonmoving party will bear the burden of proof at

trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element material to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322-23.

A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248–49 (1986). With respect to the sufficiency of the evidence that the nonmoving party carrying the burden of proof must provide, a court should grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, or speculative. *Id.* at 249–50. Accordingly, there must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252; *see also Matsushita*, 475 U.S. at 586. Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 (3d Cir. 1999). But, again, in determining whether a factual dispute is genuine, the Court must focus on which party bears the burden of

proof at trial on the factual issue in dispute, because that party must produce sufficient evidence to support the factual claim. Moreover, the Court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007).

## IV.  Discussion.[2]

Generally, Papa John's moves for summary judgment on the grounds that (1) Pennsylvania's "hills and ridges" doctrine precludes Mangual from recovering in this lawsuit, and (2) Mangual has not established that it had notice of any alleged dangerous condition. *Doc.* 35. Mangual, however, contends that: (1) the "hills and ridges" doctrine is inapplicable because a reasonable juror could conclude that generalized slippery conditions did not prevail in the community; (2) the "hills and ridges" doctrine is inapplicable because a reasonable juror could find that the slippery condition was influenced by human intervention; and (3) a

---

[2]  Here, the parties do not dispute that Pennsylvania law governs this action, and it is well-established that "federal courts sitting in diversity cases are required to apply the substantive law of the state whose laws govern[s]…." *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 378 (3d Cir. 1990). Where there is no guidance from the Commonwealth's highest court, my task is to predict how that high court would resolve the matter. *See id.* "In making such predictions [I] recognize that the state's highest authority is the best authority on its own law and that if there be no decision by that Court then [I] must apply what [I] find to be the state law after giving proper regard to the relevant rulings of other courts of the state." *Id.* (quotations and citations omitted). Thus, "[my] role is not to form or create state law but to decide the case as [I] believe it would have been decided by the state's highest court had the [issue] arisen in the state court system." *Id.* (citing *Becker v. Interstate Properties*, 569 F.2d 1203, 1205 n. 5 (3d Cir. 1977)).

genuine dispute exists as to whether Papa John's had notice of the slippery condition and consequently breached its duty of care. *Doc.* 42. For the following reasons, Papa John's motion for summary judgment shall be denied.

**A. Pennsylvania's "Hills and Ridges" Doctrine**.

Generally, under Pennsylvania law, a possessor of land owes a duty to protect his invitees from foreseeable harm. *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). An owner or occupier of land, therefore, is subject to liability for harm which befalls his invitees due to a condition on his land if he:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Wentz v. Pennswood Apartments*, 518 A.2d 314, 315 (Pa. Super. Ct. 1986)(quoting Restatement (Second) of Torts § 343). However, as made clear by Section 343A of the Restatement, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Id.* (quoting Restatement (Second) of Torts, § 343A). Consistent with these sections of the Restatement is the well-established

"hills and ridges" doctrine, which "is a refinement or clarification of the duty owed by a possessor of land and is applicable to a single type of dangerous condition, i.e., ice and snow covered walks." *Id.* at 316.

The rationale behind the "hills and ridges" doctrine is that an owner or occupier of land is not liable for *general slippery conditions*, because a requirement that one's walks always be free of ice and snow would impose an impossible burden in view of the climatic conditions in this hemisphere. *Rinaldi v. Levine*, 176 A.2d 623, 625 (Pa. 1962); *see also Whitton v. H.A. Gable Co.*, 200 A. 644 (1938). Accordingly, for a fall on an ice- or snow-covered sidewalk, the doctrine requires a plaintiff to prove:

> (1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall.

*Rinaldi v. Levine*, 176 A.2d at 625-626; *see also Tonik v. Apex Garages, Inc.*, 275 A.2d 296 (Pa. 1971); *Williams v. Shultz*, 240 A.2d 812 (1968); *Izzo v. Meyer*, 259 393 A.2d 733 (Pa. Super. Ct. 1978); *Strother v. Binkele*, 389 A.2d 1186 (Pa. Super. Ct. 1978). A plaintiff must establish all factual elements of the doctrine in order to recover. *Rinaldi*, 176 A.2d at 626. Thus, proof of a generally slippery condition alone will not suffice to pin liability on a defendant; rather, the plaintiff must also

show that there were dangerous conditions due to ridges or elevations that were allowed to persist for an unreasonable amount of time. *Beck v. Holly Tree Homeowners Ass'n*, 689 F.Supp.2d 756, 762 (E.D. Pa. 2010). Nevertheless, "a prerequisite to the application of the 'hills and ridges' doctrine is a finding of generally slippery conditions…." *Morin v. Traveler's Rest Motel, Inc.*, 704 A.2d 1085, 1088 (Pa. 1997)(cited case omitted).

In expounding upon this doctrine, the Pennsylvania courts have cautioned that it "applies only in cases where the snow and ice at issue are the result of an entirely *natural* accumulation, following a recent snowfall." *Basick v. Barnes*, 341 A.2d 157, 160 (Pa. Super. Ct. 1975)(emphasis added). Thus, the courts have found the doctrine to be inapplicable where there is a localized, isolated patch of ice and the conditions in the community are not generally slippery, *e.g., Tonik, supra*, or where the condition of the property was influenced by human intervention such as through use of a snow plow, *e.g., Harvey v. Rouse Chamberland, Ltd.*, 901 A.2d 523 (Pa. Super. Ct. 2006).

### 1. Application.

In the case *sub judice*, Mangual contends that Papa John's summary judgment motion should be denied because the "hills and ridges" doctrine is inapplicable. More specifically, Mangual contends that there is a genuine dispute as to whether (1) general slippery conditions persisted throughout the community

on the date in question, and (2) the slippery condition was influenced by human intervention. For the following reasons, I agree with Mangual that there is a genuine dispute as to whether the "hills and ridges" doctrine is applicable, but only as to his first contention.

Initially Mangual argues that the "hills and ridges" doctrine is inapplicable because the hazard was not the result of general slippery conditions prevailing in the community. Rather, according to him, the hazard was a localized patch of ice. The leading case in this regard is *Tonik v. Apex Garages, Inc.*

In *Tonik,* the plaintiff fell while walking on a public sidewalk located in front of the defendant's business premises. Prior to the day involved, there had been no recent precipitation and there was no ice or snow on any of the sidewalks along the way. 275 A.2d at 297. At one point, the plaintiff's path was blocked whereby she was forced to traverse the pavement on the sidewalk. *Id.* at 297-98. As the plaintiff proceeded to do so, she slipped in an area on the sidewalk where there was a crack in the pavement covered by ice. *Id.* at 298. Although the defendant relied upon the "hills and ridges" doctrine in its motion for a judgment notwithstanding the verdict, the Supreme Court of Pennsylvania found the doctrine inapplicable: "Where, as here, a specific, localized patch of ice exists on a sidewalk otherwise free of ice and snow, the existence of 'hills and ridges' need not be established." *Id.*

Following *Tonik*, the Supreme Court of Pennsylvania decided *Morin v. Traveler's Rest Motel, Inc.* In that case, the plaintiff slipped on ice in the parking lot owned by the defendant. On the night before plaintiff fell, and continuing into the morning hours, freezing precipitation fell from the sky. 704 A.2d at 1088. In addition, numerous news accounts reported that driving was treacherous as a result of the freezing precipitation that had "blanketed" the entire area. *Id.* Moreover, the plaintiff, herself, admitted that after she had fallen she realized the entire parking lot was covered with a thin glaze of ice. *Id.* In affirming the grant of summary judgment, the court held that based upon those circumstances, "it [was] clear as a pristine spring that generally slippery conditions existed." *Id.*

In this matter, it is not "clear as pristine spring" that generally slippery conditions existed throughout Mechanicsburg. In the photographs that Mangual provided, from the night of the incident, patches of pavement are clearly visible along with patches of ice and snow, which Mangual testified that he likewise observed. Additionally, since I am required to construe the facts in the light most favorable to Mangual and refrain from making credibility determinations, the certified weather reports reflect that there was no appreciable precipitation in the Mechanicsburg area for three days prior to the alleged incident. Moreover, the amount of snowfall on the ground decreased at a steady rate from January 12-15, 2011, and the temperature on the day of the incident was generally above freezing.

14

Thus, on this record, reasonable jurors could disagree as to whether generally slippery conditions persisted in Mechanicsburg. *See Mahanoy Area School District v. Budwash*, 604 A.2d 1156 (Pa. Commw. Ct. 1992)(ruling it was probable that the "hills and ridges" doctrine was inapplicable where the plaintiff testified that there had been no recent precipitation and that there were visible patches of ice and snow); *cf. Harmotta v. Bender*, 601 A.2d 837, 842 (Pa. Super. Ct. 1992)("hills and ridges" doctrine applied where "[a] layer of fresh snow, which had fallen the day of the accident, covered a layer of packed snow and ice").[3]

There is insufficient evidence, however, to support Mangual's second argument. In this instance, Mangual contends that the slippery condition was influenced by human intervention; namely, Malco's snow removal activities three days before the incident. Mangual, however, has not shown that Malco failed to do something that he was responsible for doing to prevent the ice from forming or that Malco's actions were not proper. *See Beck*, 689 F.Supp.2d at 765-66 (discussing plaintiff's failure to show the same). Instead, Mangual concedes in his brief that Malco's activities were reasonable under the circumstances and essentially releases Malco from liability by not opposing its summary judgment motion. *Doc.* 42 at 4,

---

[3] Although neither party draws attention to it, the photographs appear to show liquid puddles that had formed from the nearby snow and ice. Such puddles likely formed as a result of the above-freezing temperatures on the day of the incident, which gives further support to the conclusion reached herein, i.e., that there is a genuine dispute about whether generally slippery conditions persisted throughout the community.

6. Equally damaging to Mangual's contention here is that he testified that the ground conditions appeared to have formed from precipitation that had fallen from the sky, tending to further demonstrate that the accumulation was natural. On this evidence, it is difficult to imagine that reasonable jurors would disagree about whether the slippery conditions were the result of an entirely natural accumulation.[4] *Cf. Harvey,* 901 A.2d at 527-28. Nevertheless, in light of Mangual's first contention, *supra*, there is a genuine dispute about whether the "hills and ridges" doctrine is applicable.

**B. Notice.**

Regardless of whether the "hills and ridges" doctrine applies, Mangual is required to prove that Papa John's had actual or constructive notice of the hazardous condition. As previously explained, under traditional tort doctrines, an owner or occupier of land is subject to liability for harm which befalls his invitees due to a condition on his land if he:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

---

[4] This ruling is not inconsistent with my previous one (i.e. that there is a genuine dispute about whether generally slippery conditions persisted throughout the community). Just because a slippery condition is natural, does not necessarily mean that the same conditions generally persisted.

16

> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343; *Meyers v. Penn Traffic Co.*, 606 A.2d 926 (Pa. Super. Ct. 1992), *appeal denied*, 620 A.2d 491 (Pa. 1993). Thus, in order to recover damages in a "slip and fall" case, where the "hills and ridges" doctrine is inapplicable, an invitee must present evidence which proves that the store owner deviated in some way from his duty of reasonable care under the existing circumstances. *Moultrey v. Great A. & P. Tea Co.*, 422 A.2d 593, 596 (Pa. Super. Ct. 1980). This evidence must show that the proprietor had actual or constructive notice of the condition, *id*; the same requirement under the "hills and ridges" doctrine, *supra*.

Here, Mangual does not appear to provide any evidence that Papa John's had actual notice of the conditions at the rear of its leased premises. The focus, therefore, is on whether Papa John's had constructive notice.

"What constitutes constructive notice must depend on the circumstances of each case, but one of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident." *Neve v. Insalaco's*, 771 A.2d 786, 791 (Pa. Super. Ct. 2001)(citation omitted). Thus, a defendant is chargeable with constructive notice "if the defective condition existed for such a period of time that in the normal course of events the condition would have come to his attention." *Green v. Prise*, 170 A.2d 318, 320

17

(Pa. 1961). Other factors to consider "are the size and physical condition of the premises, the nature of the business conducted thereon, the number of persons using the premises and the frequency of such use, the nature of the defect and its location on the premises, its probable cause and the opportunity which defendant, as a reasonably prudent person, had to remedy it." *D'Aprile v. Rolling Hill Hosp.*, 28 Pa. D. & C. 4th 430, 434 (1995), *aff'd*, 685 A.2d 216 (Pa. Super. Ct. 1996)(citing *Davanti v. Hummell*, 185 A.2d 554, 556 (Pa. 1962)).

In this case, the evidence is sparse and the parties' arguments do not particularly assist the Court on this issue. There appears to be a genuine dispute, however, about whether Papa John's had constructive notice of the alleged hazardous condition at the rear of the leased premises. In particular, although Mangual did not provide any evidence about Papa John's business dealings or a more-detailed description of the premises, the photographs provided by Mangual appear to show a considerable accumulation of ice in the area where he allegedly slipped. Moreover, while there is a genuine dispute about whether the same slippery conditions persisted throughout the community, the WeatherWorks Report certainly favors Mangual's position on this factor. Those reports, as discussed, indicate that the surrounding area received a couple of inches of snowfall four days prior to the incident and the temperatures thereafter remained, generally, below freezing. Therefore, it is entirely reasonable for a juror to conclude that any

precipitation at the premises froze over during the prior four-day period. Moreover, although the temperatures were generally above freezing on the day of the incident, it would certainly be equally reasonable for a juror to conclude that the same hazardous, slippery, condition had not fully melted, whereby the hazardous condition would have persisted for at least three days.

Given that one of the most important factors to be taken into consideration is the time elapsing between the origin of the hazardous condition and the incident, I am hard-pressed to find that there is no genuine dispute of material fact regarding Papa John's constructive notice. Thus, this is a factual issue better left to be resolved by the ultimate finder of fact, the jury.

V. **Order.**

Accordingly, for the foregoing reasons, **IT IS ORDERED** that:

(1) Wesley's and Malco's unopposed motions for summary judgment (*Docs.* 28 & 39), respectively, are **GRANTED**;

(2) Papa John's motion for summary judgment (*Doc.* 34) is **DENIED**;

(3) a separate Order will issue setting a telephonic status conference with Papa John's and Mangual to discuss pre-trial and trial deadlines; and

(4) the Clerk of Court is directed to defer the entry of judgment pending the conclusion of the litigation.

*S/ Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge